# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KEITH JACKSON, )
)
Petitioner, )
)
v. )      No. 3:09-cv-00962
)      Chief Judge Haynes
)
JAMES FORTNER, Warden, )
)
Respondent. )

## M E M O R A N D U M

Petitioner, Keith Jackson, a state inmate, filed this pro se action under 28 U.S.C. § 2254,

seeking the writ of habeas corpus to set aside his state convictions for possession with intent to sell

twenty-six grams or more of cocaine within 1,000 feet of a school, and possession of a firearm with

intent to use it in an offense, for which Petitioner received an effective sentence of 36 years. After

a review of the pro se petition, the Court granted Petitioner's motion to appoint counsel and

appointed the Federal Public Defender to represent Petitioner. (Docket Entry No. 6). In his amended

petition[1] prepared by his counsel, (Docket Entry No. 16), Petitioner asserts the following claims: (1)

a sentencing in violation of Blakely v. Washington, 542 U.S. 296 (2004); (2) denial of effective

assistance of trial counsel on multiple grounds; (3) improper jury instructions; (4) insufficient

evidence at trial; and (5) actual innocence. (Docket Entry No. 16).

---

[1]As in prior decisions, this Court deems the amended petition to supercede "completely" the pro se petition. Drake v. City of Detroit, Michigan, 266 Fed. Appx. 444, 448 (6th Cir. 2008). The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005). Under Fed. R. Civ. P. 15(a), the filing of an amended complaint supercedes the prior complaint. Drake, 266 Fed. Appx. at 448; Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986).

Respondent filed an answer containing portions of the state record. (Docket Entry No. 27). In his answer, Respondent contends, in sum: (1) that the state courts' denial of Petitioner's <u>Blakely</u> sentencing violation claim is neither contrary to nor an unreasonable application of clearly established federal law; (2) that the sum of Petitioner's ineffective assistance of counsel claims are procedurally defaulted; (3) that Petitioner's improper jury instructions claim is procedurally defaulted; (4) that the state courts' denial of Petitioner's insufficient evidence claim is neither contrary to nor an unreasonable application of clearly established federal law; and (5) that Petitioner's actual innocence claim is not a ground for relief under the facts in this action. <u>Id.</u>

For the reasons set forth below, the Court concludes that based upon a review of the state record, Petitioner is not entitled to habeas relief as the state court made reasonable determinations of his claims under federal law.

## A. Procedural History

On August 19, 2003, a Davidson County jury found Petitioner guilty of possession with intent to sell twenty-six grams or more of cocaine within 1,000 feet of a school, and possession of a firearm with intent to use it in an offense. <u>State v. Jackson</u>, No. M2004-00562-CCA-R3-CD, 2005 WL 839299 at *1 (Tenn. Ct. Crim. App. Apr. 12, 2005). The state trial judge imposed a 36 year sentence for the drug offense and a three year sentence for the firearm offense, to run concurrently. <u>Id.</u> On direct appeal, the Tennessee Court of Criminal Appeals vacated the firearm conviction for insufficiency of the evidence, but affirmed the other convictions. <u>Id.</u> at *15. On October 17, 2005, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. <u>Id.</u> at 1.

On October 26, 2005, Petitioner filed his state post-conviction petition, raising two claims. <u>Jackson v. State</u>, No. M2008-145-CCA-R3-PC, 2009 WL 276781 (Tenn. Ct. Crim. App. Feb 4,

2

2009). On July 2, 2007, Petitioner had an evidentiary hearing after which the trial court denied relief. On post-conviction appeal, the Tennessee Court of Criminal Appeals affirmed. Id. On June 29, 2009, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. Jackson v. State, 2009 Tenn. LEXIS 318 (Tenn. June 29, 2009).

On October 13, 2009, Petitioner filed this action, (Docket Entry No. 1), but the claims in his amended petition were not filed until April 16, 2010. (Docket Entry Nos. 6, 16).

### B. Procedural Defaults

Respondent contends numerous claims in Petitioner's amended petition are procedurally defaulted for Petitioner's failures to present these claims to the state courts. These challenged claims are: (1) improper jury instructions; (2) actual innocence; and (3) the sum of Petitioner's ineffective assistance of counsel claims: (i) that his counsel failed to investigate adequately the accuracy of the GPS measurements placing Petitioner's alleged action within 1,000 feet of a school; (ii) that his counsel failed to effectively challenge the legality of the search and seizure of Petitioner's car; (iii) that his counsel failed withdraw from representation despite a conflict of interest; (iv) that his counsel failed to litigate adequately Petitioner's sufficiency of evidence claim on appeal; (v) that his counsel failed to adequately advise Petitioner with respect to the State's proposed plea agreement; (vi) that his counsel failed to call a defense witness; (vii) that his counsel failed to object to previously undisclosed testimony of Officer Flowers; and (viii) that his counsel failed to object to Officer Flowers' testimony regarding Petitioner's gambling. (Docket Entry No. 16, Petitioner Keith Jackson's Amended Petition, at 6-7).

"Procedural Default Doctrine is an extension of the comity policy that underscores the exhaustion doctrine and bars consideration of a federal claim in a habeas action absent a showing

of cause and prejudice or actual innocence.  As defined by the Supreme Court, under this doctrine:

> [t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. **This rule applies whether the state law ground is substantive or procedural**.  In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. **Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory**. . .

> \*     \*     \*

> . . . **the doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement**.  In these cases, the state judgment rests on an independent and adequate state procedural ground.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1992) (emphasis added and citations omitted).

The rationale for this doctrine arises out of federal respect for federalism and maintaining comity with state courts:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism.  Without a rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

> \*     \*     \*

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. . . .In the absence of an independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 730-32.

The Supreme Court further recognized that state procedural rules also serve a legitimate state interest in finality of criminal convictions:

> [p]lainly the interest in finality is the same with regard to both federal and state prisoners. . . . There is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

Francis v. Henderson, 425 U.S. 536, 542(1976) (quoting Kaufman v. United States, 394 U.S. 217, 228 (1969)).

In Murray v. Carrier, 477 U.S. 478 (1986), the Supreme Court noted that state procedural rules channel the controversy to the state trial and appellate courts.

> [A] state's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack . . . Each state's compliment of procedural rules . . . channel[s] to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercut[s] the state's ability to enforce its procedural rule[s].

Id. at 490-91 (quoting Engle v. Isaac, 456 U.S. 107, 129 (1982)).

The procedural default doctrine applies only to firmly established and "regularly followed" state procedural rules. Johnson v. Mississippi, 486 U.S. 578, 587 (1988). Moreover, if the state court did not determine whether a petitioner's claims were procedurally defaulted under state law, then the District Court is to consider whether the state court would bar the claims, if those claims were presented to the state courts. Engle, 456 U.S. at 125-26, n.26. If the state decision is unclear, then the same rule obtains and the Court examines the briefs of the parties in the state courts. Bagby v. Sowders, 853 F.2d 1340, 1348 (6th Cir. 1988).

Once procedural default on a state rule is established, the federal petitioner must establish

cause and prejudice to excuse such non-compliance. <u>Carrier</u>, 477 U.S. at 488. The procedural default doctrine also does not preclude federal habeas review if the petitioner has an error-free trial, but makes a showing of actual innocence of the offense with clear and convincing evidence that reveals a fundamental miscarriage of justice. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 336 (1992).

In the Sixth Circuit, the analysis under the procedural default doctrine was set forth by the Court of Appeals in the oft-cited <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986):

> When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> *   *   *
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
>
> *   *   *
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

<u>Id.</u> at 138 (citations omitted).

From the Court's review, Petitioner's claims of ineffective assistance of counsel, improper jury instructions, and actual innocence were not fully exhausted in the state courts. Petitioner did not present his claims in the amended petition on his direct appeal. Petitioner also did not present these claims to the Tennessee Supreme Court after the state appellate court confirmed his conviction. Thus, under Tenn. Code Ann. § 40-30-106(g), the claims are deemed waived. Under that statute,

"[a] ground for relief [in] in a post-conviction proceeding] is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction," as here, on appeal from the judgment of the trial court. Tenn. Code Ann. § 40-30-106(g). The Sixth Circuit has also found that the Tennessee waiver statute, Tenn. Code Ann. § 40-30-106(g), to be an independent and adequate state rule that is regularly enforced. Cone v. Bell, 243 F.3d 961, 969 (6th Cir. 2001), overruled on other grounds by Bell v. Cone, 535 U.S. 685 (2002)).

If a petitioner has not exhausted his claims, but is now procedurally barred from doing so, he must show "cause for the noncompliance" and "actual prejudice resulting from the alleged constitutional violation." Wainwright v. Sykes, 433 U.S. 72, 84 (1977). Procedural default may also be excused "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

To show cause, Petitioner must show that some objective factor impeded his counsel's compliance with the State's procedural rule. See id. at 488. Objective factors include interference by public officials, ineffective assistance of counsel, of unavailability of factual or legal basis for a claim. Id. Where a Petitioner "makes no argument that this procedural default should be excused, under either the cause-and-prejudice or miscarriage of justice exceptions" these claims shall be dismissed. Rayner v. Mills, 685 F.3d 631, 644 (6th Cir. 2012).

Here, Petitioner asserts that his counsel's failures collectively rose to the level of ineffective assistance of counsel. Yet, these claims of ineffective assistance of counsel were not properly presented to the state court. The Supreme Court states that in such mistakes,

The question raised by the present case is whether [the] exhaustion requirement for claims of ineffective assistance asserted as cause is uniquely immune from the procedural-default rule that accompanies the exhaustion requirement in all other contexts-whether, in other words, it suffices that the ineffective-assistance claim was "presented" to the state courts, even though it was not presented in the manner that state law requires. That is not a hard question. An affirmative answer would render [the] exhaustion requirement illusory.

\* \* \*

To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not **itself** be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.

Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) (emphasis in original).

A district court in this Circuit has observed that:

The failure of petitioner's counsel to raise these claims on direct appeal, if that failure rises to the level of ineffective assistance in violation of the Sixth Amendment, could arguably constitute cause for his procedural default. Petitioner, however, had the opportunity to [properly] raise such a claim of ineffective assistance during the state post-conviction process, and did not. His right to bring that claim is also now barred. **Accordingly, his failure to exhaust that ineffective assistance claim precludes him from showing cause for failing to raise these claims during his direct appeal**.

Alley v. Bell, 101 F. Supp. 2d 588, 631 (W.D. Tenn. 2000) (emphasis added).

The Supreme Court created an equitable exception to procedural default under Martinez v. Ryan, 132 S. Ct. 1309 (2012). The Supreme Court's holding in Martinez, "qualifies Coleman by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. The Supreme Court defined "initial-review collateral proceedings" as proceedings "which provide the first occasion to raise a claim of ineffective assistance at trial."

8

Id. Given Martinez's equitable approach and Tennessee courts' preference for these ineffective assistance of counsel claims being asserted in state post conviction proceedings, the Court concludes that Martinez's application to Tennessee's post-conviction system should be based upon the facts of each case, namely whether the facts underlying this type of the new claim were reasonably known to Petitioner or his trial counsel during the trial to enable so as Petitioner or his counsel to preserve the issue for the trial record and his direct appeal. Yet, Petitioner has not shown Martinez to apply here. Thus, the Court concludes Petitioner has not demonstrated cause or prejudice for his ineffective assistance of trial and direct appeal counsel nor his claims for improper jury instructions.

Petitioner next contends his trial was infected by an improper jury instruction in violation of his due process rights. This claim was not sufficiently presented to the state courts and is barred under Coleman. State procedural rules that channel the controversy to the state trial and appellate courts must be honored because failure to do so "deprives the [state] appellate court of an opportunity to review trial error, and 'undercut[s] the State's ability to enforce its procedural rule[s]'" Murray, 477 U.S. at 491. Tennessee's waiver statute has been held to serve a legitimate state interest and is regularly enforced for purposes of procedural default. See Hutchison v. Bell, 303 F.3d 720, 738 (6th Cir. 2002). Petitioner did not sufficiently present this claim before the state courts, and under state rules that claim is waived. Thus, under Coleman, the Court concludes this claim is procedurally barred without any showing of cause or prejudice. Moreover, Petitioner failed specify any facts supporting his claim as he failed identify the specific instruction he found improper.

Petitioner also presents a claim of actual innocence. The procedural default doctrine may not preclude federal habeas review if failure to hear the petitioner's defaulted claim would result in a

fundamental miscarriage of justice or would prove his actual innocence of the offense. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). If there were an error-free trial and the actual innocence claim was based upon newly discovered evidence, then the petitioner's showing of actual innocence must be "truly persuasive" or "extraordinarily high" to show a "constitutionally intolerable event" as well as the lack of an available state remedy. Herrera v. Collins, 506 U.S. 390, 427 (1993).

Actual innocence claims must be substantive or factual, not procedural, such as a claim of innocence based on ineffective assistance of counsel or a prosecutor's failure to disclose Brady material is procedural and subject to the procedural default doctrine. Schlup v. Delo, 513 U.S. 298 (1995). As the Court in Schlup explained, "if there were no question about the fairness of the criminal trial, a Herrera type claim would have to fail unless the federal habeas court is convinced that those new facts unquestionably establish [the petitioner's] innocence. On the other hand, if the habeas court were merely convinced that those new facts raise sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error [the petitioner's] threshold showing of innocence would justify a review of the merits of the constitutional claims." Id. at 317.

Where the claim of actual innocence is premised upon a trial with error, then a different and lesser standard of judicial review of "sufficient doubt" applies. As the Supreme Court stated in Schlup.

In Schlup, the Court addressed the standard of proof that a federal petitioner would have to show to establish the actual innocence exception to the procedural default rule in non-capital cases. In contrast, for cases other than death penalty cases, the Court in Schlup applied the standard in its earlier Carrier decision stating:

[W]e hold that the Carrier "probably resulted" standard rather than the more stringent Sawyer standard must govern the miscarriage of justice inquiry when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims.

The Carrier standard requires the habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. **The petitioner thus is required to make a stronger showing than that needed to establish prejudice. At the same time, the showing of "more likely than not" imposes a lower burden of proof than the "clear and convincing" standard required under Sawyer. The Carrier standard thus ensures that petitioner's case is truly "extraordinary,"** McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice.

Carrier requires a petitioner to show that he is "actually innocent." As used in Carrier, actual innocence is closely related to the definition set forth by this Court in Sawyer. To satisfy the Carrier gateway standard, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

Several observations about this standard are in order. The Carrier standard is intended to focus the inquiry on actual innocence. In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial. Indeed, with respect to this aspect of the Carrier standard, we believe that Judge Friendly's description of the inquiry is appropriate: the habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

The consideration in federal habeas proceedings of a broader array of evidence does not modify the essential meaning of "innocence." The Carrier standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068. Indeed, even in Sawyer, with its emphasis on eligibility for the death penalty, the Court did not stray from the understanding that the eligibility

determination must be made with reference to reasonable doubt. Thus, whether a court is assessing eligibility for the death penalty under <u>Sawyer</u>, or is deciding whether a petitioner has made the requisite showing of innocence under <u>Carrier</u>, the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence.

<u>Id.</u> at 326-28 (footnotes omitted) (emphasis added).

Petitioner's actual innocence claim is not based on newly discovered evidence. Thus, the Court concludes that Petitioner has not met the standard under the actual innocence doctrine to excuse his procedural defaults.

## C. Exhausted State Claims

## 1. Review of the State Court

As to the facts underlying Petitioner's conviction, the Tennessee Court of Criminal Appeals found[2] as follows upon post-conviction review:

> On September 28, 2001, officers executed a search warrant for an apartment in a Nashville apartment complex. See State v. Keith Latrell Jackson, No. M2004-00562-CCA-R3-CD, 2005 WL 839299, at * 1 (Tenn.Crim.App., Nashville, Apr. 12, 2005), perm. to appeal denied, (Tenn. Oct. 17, 2005). Four men, including the Petitioner, appeared to be gambling on the stoop of an apartment located in front of the apartment that the officers were searching. See id. The Petitioner fled but, after running approximately fifty yards, returned to the apartment. See id.

> [J.D. Jones, a lieutenant with the Metropolitan Police Department] noticed a Monte Carlo, that had a temporary tag, parked near his police car, and he asked if anyone had the keys to that car. He testified that none of the men said that they knew anything about the vehicle. Lieutenant Jones later discovered that the temporary tag was issued to the [Petitioner's] mother. The lieutenant attempted to unlock the Monte Carlo using keys found on the [Petitioner], and, after he determined that the keys successfully unlocked the car, he re-locked the car and called for a K-9 unit to search the car for the presence of narcotics.

---

[2] State appellate court opinion findings can constitute factual findings in a habeas action, <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

Lieutenant Jones testified that he was present for the K-9 search of the Monte Carlo. He said that the police dog alerted for the presence of narcotics by scratching on the passenger side door. Lieutenant Jones testified that he and the other officers opened the vehicle and found approximately $38,000 in the right passenger seat. He said that the dog also alerted the officers to the console inside the vehicle, and the officers found a bag that contained between fifty and sixty grams of cocaine. Lieutenant Jones testified that he also discovered a gun between the console and the driver's seat, and electronic scales that had cocaine residue were recovered from the console. He testified that, under the seats of the vehicle, he found dryer sheets, which are typically used to mask the scent of drugs. The lieutenant said that the [Petitioner] did not tell him where the [Petitioner] had acquired $38,000, and the [Petitioner] said that he was unemployed.

Lieutenant Jones testified that he also recovered several papers and a Sprint cell phone box with a bill from the car. He said that the Sprint cell phone bill was for an account held in the [Petitioner's] name. The lieutenant found three cell phones either on the [Petitioner's] person or in the car. Lieutenant Jones stated that, based on his experience, people involved in drug trafficking use multiple cell phones to avoid detection. Lieutenant Jones testified that there was a receipt in the car for its purchase. He said that the receipt was from an auto sales store, and it described the vehicle as a black Chevrolet Monte Carlo that was purchased for $5900 in cash and paid for by the [Petitioner]. The receipt was signed by Donna Jackson, the [Petitioner's] mother.

....

Samuel Johnson, an officer with the Metro Police Drug Task Force, testified that ..., when he arrived at the apartment building, he saw four men on the front porch of another, nearby apartment. He testified that he wore a police uniform, and it was his responsibility to enter and secure apartment C for the other officers. Officer Johnson testified that, while he went to apartment C, Lieutenant Jones approached the four men on the nearby porch. Later, he assisted Lieutenant Jones by searching the [Petitioner], to ensure officer safety, and he noticed a bulge in the [Petitioner's] pocket of his pants. Officer Johnson testified that the [Petitioner] told him that the bulge was money, and the [Petitioner] gave the officer permission to remove the money. The officer explained that he removed two bunches of money totaling $5921, $2000 of which was wrapped in a white grocery bag secured by rubber bands. He testified that the [Petitioner] also had keys and a driver's license in his pocket, and he removed all of these items and placed them on the sidewalk. Officer Johnson testified that he was present when Lieutenant Jones inquired about the Monte Carlo, and no one responded.

Officer Johnson testified that the K-9 officer and dog arrived to examine two

vehicles, one in front of the apartment and the black Monte Carlo located on the street. He said that the dog gave a positive alert to the presence of the odor of narcotics. He said that the dog scratched the door of the Monte Carlo, and Lieutenant Jones opened the door with the [Petitioner's] keys. The dog again alerted positively to the presence of narcotics in the console area, where they found a bag containing approximately 59 grams of cocaine. The officer also found in the car drug scales, a .9 millimeter handgun, a bag containing about $36,000, dryer sheets, some baggies, and paperwork on the vehicle. He testified that the money seized totaled $43,886.

Jackson, WL 839299 at *2-3. The state courts' other factual findings are set forth in the analysis of specific claims.

## 2. Conclusions of Law

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, however, with respect to claims that have been "adjudicated on the merits in State court proceedings,"

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted . . . unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. In sum, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable view of the facts. Harris v. Stovall, 212 F.3d 940, 943

(6th Cir. 2000); Franklin v. Francis, 144 F.3d 429, 433 (6th Cir.1998).

The Court must presume the correctness of state court factual determinations, and the Petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous."), abrogated on other grounds Thompson v. Keohane, 516 U.S. 99, 111 (1995). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, ——U.S. ——, ——, 131 S.Ct. 1388, 1398 (2011) (quoting Harrington v. Richter, 562 U.S. ——, —— 131 S.Ct. 770, 786 (2011); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen, 131 S.Ct. at 1399.

The Supreme Court explained that a state-court decision will be "contrary to" clear established federal precedent only if the state court "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case," or if a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir.2008) (citations and internal quotation marks omitted).

The Supreme Court has explained that a state-court factual determination is not

"unreasonable" merely because the federal habeas court would have reached a different conclusion. Wood v. Allen, 558 U.S. 290 (2010). The mere fact that "[r]easonable minds reviewing the record might disagree" about the factual finding in question "does not suffice [on habeas review] to supersede the trial court's . . . determination." Rice v. Collins, 546 U.S. 333, 341–42 (2006). Thus, a state court's factual determinations "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller–El v. Cockrell, 537 U.S. 322, 340, (2003). A state court's application of federal law is "unreasonable" and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

### a. Sentencing Violation

Petitioner contends his sentence violates Blakely v. Washington, 542 U.S. 296 (2004), because his sentence was enhanced from 35 years to 36 years based on enhancement factors not found by the jury. On direct appeal, the Tennessee Court of Criminal Appeals stated:

> The United States Supreme Court's recent opinion in Blakely calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. 124 S.Ct. at 2537. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. Finally, the Court concluded that "every defendant has a **right** to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2539. This Court has held that Blakely violations are subject to a Constitutional harmless error analysis. State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *24 (Tenn.Crim.App., at Nashville, Nov. 30, 2004), no perm. app. filed. "While it is true that Blakely concerns the inviolate right to a jury trial, the cornerstone upon which

our criminal justice system was constructed, we cannot say that a jury's failure to determine an enhancement factor 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " Id. (quoting Needer v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Thus, before we modify a defendant's sentence, we will "review the Blakely errors to determine whether they were harmless beyond a reasonable doubt." Id.; see Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

First, we note that the Defendant has not waived this issue. We have held that, because Blakely announced a new rule, any defendant whose case was still on direct appeal could raise this issue. Walters, 2004 WL 2726034, at *19. We explained that, although Blakely was the Supreme Court's explanation of its prior decision in Apprendi, the Tennessee Supreme Court had previously announced that the rule in Apprendi did not affect our State's sentencing scheme. Id. As a result, the mandate of Blakely created a new rule in Tennessee. Id. Furthermore, in Walters, this Court held that Blakely could be raised in all cases on direct appeal, because a violation of this mandate was plain error arising from the deprivation of the Constitutional right to a jury trial. Id.; see also State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *7-10 (Tenn.Crim.App., at Nashville, Oct. 8, 2004), no perm. app. filed. Thus, because the Defendant did not waive this issue, the question becomes whether the sentence imposed by the trial court violates the United States Supreme Court mandate in Blakely.

The trial court applied enhancement factor (2) based on the Defendant's admission in the pre-sentence report of previous criminal behavior, specifically, that he had used marijuana on several occasions. We note that this Court has held that there is a distinction for Blakely purposes between previous criminal convictions and a previous history of criminal behavior. State v. Michael Paul Mondell, No. E2003-02791-CCA-R3-CD, 2005 WL 378978, at *4 (Tenn.Crim.App., at Knoxville, Feb. 17, 2005), no perm. app. filed. In that case, we held the trial court improperly applied this enhancement factor based upon the Defendant's previous history of criminal behavior when the Defendant had no prior record of criminal convictions. Accordingly, in the case under submission, the trial court could not properly apply this enhancement factor based upon the Defendant's previous marijuana use unless this enhancement factor was admitted by the Defendant or submitted to a jury.

The record reflects that because the Defendant's two prior convictions were used to establish that he was a Range II multiple offender, the court's application of factor (2) was necessarily based upon the Defendant's statement to the pre-sentence report officer that he used marijuana on multiple occasions. We conclude that the trial court erred in its application of enhancement factor (2) because the Defendant's admission to prior drug use in the pre-sentence report does not contain "sufficient guarantees of trustworthiness ... without offending Blakely." State v. Abel Torres, No. M2004-

00559-CCA-R3-CD, 2005 WL 292431, at *8 (Tenn. Crim. App., at Nashville, Feb. 4, 2005), no perm. app. filed. Therefore, the trial court's application of this enhancement factor was error, and we have concluded that the error was not harmless beyond a reasonable doubt.

The trial court also applied enhancement factor (9), that the Defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," the trial court applied this factor because the Defendant committed this crime less than two years after he was previously convicted of possession of cocaine, and "he was back on the street doing the same thing [a]s what he was doing on some form of release...." We conclude that this factor was not admitted by the Defendant or found by a jury. Furthermore, as it is subject to Blakely, we conclude that the trial court erred when it applied this enhancement factor. This error, however, was harmless beyond a reasonable doubt. The Defendant's pre-sentence report, which was admitted as an exhibit without objection during the sentencing hearing, indicates that the Defendant has had his probation revoked on one occasion. The Defendant was convicted of selling drugs and was sentenced to eight years on probation on July 16, 1998. This Defendant was found guilty of a probation violation, and he was ordered to serve the sentence in prison. Further, the Defendant was also convicted of possession of cocaine on May 17, 1999 and was sentenced to twelve years. Accordingly, we conclude that the trial court's application of this factor was harmless beyond a reasonable doubt.

State v. Jackson, No. M2004-00562-CCA-R3CD, 2005 WL 839299 at *13-14 (Tenn. Ct. Crim. App. Apr. 12, 2005).

As the state court noted, Petitioner correctly contends the trial court's application of "enhancement factor (9)" was error. Yet, the Court agrees with the state court's conclusion that the error was harmless given the undisputed evidence Petitioner admitted in his pre-sentence report. Thus, the Court concludes the Tennessee Court of Criminal Appeals was not unreasonable in applying federal law.

### b. Insufficient Evidence

Petitioner next contends the evidence presented at his trial did not support the jury's finding that he knowingly possessed drugs within 1,000 feet of a school. The Tennessee Court of Criminal

Appeals rejected this claim.

> We must first determine whether the State established beyond a reasonable doubt that the Defendant knowingly possessed a substance containing cocaine within 1000 feet of a school zone. Tennessee Code Annotated section 39-17-418(a), prohibiting possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, „constructive possession is the ability to reduce an object to actual possession.." Id. at 845 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn.Crim.App.1996) (citations omitted)). "As such, although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." Id. (citation omitted).

> Viewing the evidence in the light most favorable to the State, the evidence proves that the Defendant had constructive possession of the substance containing cocaine that was found in the Monte Carlo. See State v. Lonnie Walter Hurd, No. E2002-00832-CCA-R3-CD, 2003 WL 22303083, at *4 (Tenn. Crim. App., at Knoxville, Oct. 8, 2003), no perm. app. filed; see also State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App.1995) (holding that "[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted"). After conducting a legal search of the Defendant, officers found a key to the Monte Carlo in his pocket. After a K-9 dog alerted to the presence of drugs in the Monte Carlo, the officers then conducted a legal search of the vehicle using the Defendant's key. When the officers searched the interior of the vehicle, they found a Sprint cell phone bill addressed to the Defendant. The Monte Carlo sales receipt was also found in the vehicle and was signed by the Defendant's mother, who was not present at the time these events occurred. The officers found a large quantity of money and a bag containing cocaine in the car. From this evidence, we conclude that a rational trier of fact could have found that the Defendant was in constructive possession of the Monte Carlo and its contents. Further, Scott Cherry testified that, according to his two GPS measurements, the distance to the school from the property was between 939 feet and 947 feet. Therefore, we conclude that there was sufficient evidence that the Defendant knowingly possessed cocaine within a Drug-Free School Zone.

Jackson, 2005 WL 839299 at *9.

In order to state a insufficiency of evidence claim, the Supreme Court in Jackson v. Virginia,

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), set forth the standard for reviewing the legal sufficiency of the evidence in support of a conviction.

> ...[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon `jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

443 U.S. at 318-19 (emphasis added with footnotes and citations omitted).

A presumption of correctness obtains in determining whether there exists sufficient evidence to support a conviction. If any rational finder of fact would accept the evidence as establishing each essential element of the crime, the Jackson standard of review is satisfied. Jackson, 443 U.S. at 324 (1979). The rule concerning reasonable inferences applies with equal force to historical facts. Parke v. Raley, 506 U.S. 20, 35-36 (1992) (involving the challenge to a prior conviction that resulted in enhancement of a sentence).

Here, Petitioner fails to show that the Tennessee Court of Criminal Appeals determination was contrary to clearly established federal law. Thus, the Court concludes that the state appellate court's conclusion on this claim is not contrary to applicable federal law.

For these collective reasons, the Court concludes that the petition for the writ of habeas

corpus should be denied.

An appropriate Order is filed here within.

**ENTERED** this ___26___ day of February, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court